UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KAY CAMPBELL and JANIS HOLSTEIN, on behalf of themselves and all others similarly-situated, | |
| Plaintiffs, | Case No. 1:09-cv-1430-LJM-MJD |
| v. | |
| ADVANTAGE SALES & MARKETING, LLC, | |
| Advantage. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Advantage's intent to depose an unlimited number of opt-in plaintiffs disregards the well-established rules of procedure and runs afoul of the broad remedial purposes of the FLSA. Accordingly, Advantage's use of depositions should be restricted to comport with the spirit of the FLSA. Forcing the Plaintiffs, and their counsel, to continue to travel great distances and incur substantial expense is burdensome, harassing and oppressive. Recognizing the time and expense involved, courts have repeatedly expressed strong concerns with the risk of overuse of depositions in large complex cases and therefore imposed restrictions. Further, Advantage has failed to identify a compelling need for the continued noticing of class member depositions. Contrary to Advantage's assertion, it is not entitled to individualized discovery and limitless depositions. Rather, due to the nature of a collective action and the size of this collective class, the law mandates the use of representative discovery and the limitation on the use of depositions.

## I.    STATEMENT OF FACTS

Janis Holstein and Kay Campbell, on behalf of themselves and all others similarly situated, filed their Complaint against Advantage Sales and Marketing, LLC on November 17, 2009 alleging violations of the overtime provisions of the Fair Labor Standards Act (FLSA). (Dkt. #1).   On February 12, 2010, Plaintiffs filed their motion to conditionally certify this case as a collective action pursuant to 29 U.S.C. § 216 (b).   (Dkt. #16-17).   Following extensive briefing, this Court granted the Plaintiff's motion to conditionally certify the collective class on August 24, 2010.  (Dkt. #41).   Thereafter, the Plaintiffs moved for the approval of a notice to potential collective class members.  (Dkt. #42). The proposed notice was ultimately granted by this Court on October 28, 2010.  (Dkt. #55).   The Court-approved notice to potential opt-in plaintiffs was mailed on November 18, 2010.  (Dkt. #64).  At the expiration of the opt-in period, a total of 716 plaintiffs had joined the collective class.   (Dkt. #119).

On January 15, 2011, before the opt-in period had expired, Advantage sent correspondence to Plaintiffs with exemplar discovery requests which it intended to serve on *all* opt-in Plaintiffs.  (*See* Declaraton of Jason R. Delk in Support of Plaintiffs' Motion to Compel Discovery From Defendant, Exhibit 1). Additionally, Advantage identified 50 individuals from 25 different states who were to be a part of Advantage's "first batch of opt-in deposition discovery."  *Id.*   Plaintiff's counsel objected to Advantage's discovery proposal via email on January 27, 2011.  (*See* Delk Dec., Exhibit 2).  Specifically, Plaintiff's counsel objected to the number of depositions sought and the geographic division proposed by Advantage. *Id.* Plaintiff's counsel further expressed concern with the request for discovery of all opt-in Plaintiffs. *Id.*  As an alternative, it was proposed that initial depositions consist of one opt-in

plaintiff from each of the business units with written discovery to be completed by those deponents. *Id.*

In response, Advantage proposed that its initial deposition schedule be reduced to 32 opt-in Plaintiffs consisting of 2 individuals from each of the 16 corporate teams represented in the class. *Id.* However, Advantage made it clear that this was "only an initial set of depositions" and it was "very likely to want to depose many more opt-ins." *Id.* Neither the original letter, nor the email counter-proposal, explained the method by which the Advantage would choose the individuals whom it desired to depose. The Plaintiffs agreed to cooperate in scheduling the 32 proposed depositions, contingent upon the assurance that no deponent would have to travel more than 1.5 hours. (*See* Delk Dec., Ex. 3).

Thereafter, Advantage provided its proposed schedule of the agreed upon 32 depositions to Plaintiffs. Upon review, Plaintiffs objected on the basis that the proposal required several deponents to travel anywhere from 2 to 7 hours for the scheduled deposition. (*See* Delk Dec., Ex. 4). The Plaintiffs suggested that alternative class members near the proposed locations be deposed, or, in the alternative that additional locations be added to limit travel time and expense for deponents and counsel to a reasonable level. *Id.* In the interim, Advantage conducted the deposition of both named Plaintiffs on January 20-21, 2011. Shortly thereafter, the parties began traveling across the country for depositions of opt-in Plaintiffs. Between February 18, 2011 and March 10, 2011, Advantage conducted depositions of eleven (11) opt-in Plaintiffs in nine (9) different locations. Throughout this period, Advantage made clear its intention to seek dismissal of those opt-in plaintiffs that were unable to be contacted or failed to appear for a scheduled deposition.

On February 28, 2011, while the parties were in the midst of travelling for previously scheduled depositions, Advantage notified Plaintiff of its intent to schedule the depositions of an additional 42 opt-in plaintiffs in six (6) different cities. (*See* Delk Dec., Ex. 5). Plaintiffs again expressed frustration with the number of depositions and the travel requirements of deponents. Nonetheless, the parties were successful in scheduling an additional 19 depositions in seven (7) different locations between March 21, 2011 and April 21, 2011. In sum, Advantage has already deposed 32 class members representing 15 states and at least 11 different corporate teams. Further, Advantage has deposed one former supervisor identified by the Plaintiffs as a potential witness. These 33 depositions took place in 17 locations across the country. Since the conclusion of the last deposition, Advantage has expressed its intent to schedule a significant amount of additional depositions of opt-in plaintiffs.

## II.    LEGAL STANDARD

"District courts have broad discretion in matters relating to discovery." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Rule 26 (c) confers broad discretion upon the court to decide when a protective order is appropriate. *Seattle Times v. Rhinehart,* 467 U.S. 20, 36 (1984). Only good cause is required in determining whether or not to issue a protective order. *Id.* A court must limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Discovery must also be limited where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." *Id.* (emphasis added).

## III.  ARGUMENT

Advantage's attempt to depose unlimited opt-in plaintiffs is unduly burdensome, oppressive and contrary to the law.  Courts have identified depositions as a particular problem in the management of complex cases such as a collective action.  *Geer v. Challenge Financial Investors, Corp.*, 2007 WL 1341774, *3 (D. Kan. 2007).  The reason for this concern is that "in complex cases, depositions are often overused and conducted inefficiently, and thus tend to be the most costly and time-consuming activity." *Brasfield v. Source Broadband Services, LLC*, 255 F.R.D. 447, 449 (W.D. Tenn. 2008) (citation omitted).  As such, "when it comes to controlling the use of depositions, the court should use the information provided by the parties about the need for the proposed depositions, the subject matter to be covered, and the available alternatives." *Id.*  "In addition, aside from setting appropriate limits, the judge should also be concerned with the time and place of the depositions, including proposed travel and the recording methods." *Id.*

The concern with overuse of depositions is further compounded by the fact that FLSA collective actions are designed to reduce plaintiffs' expenses though the consolidation of resources and to promote the efficient resolution of common claims.  *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989).  In fact, due to the time and expense associated with depositions, parties and courts have routinely limited the use of depositions in collective actions. *See, e.g., Falcon v. Starbucks*, 580 F.Supp. 2d 528, 530 (S.D. Tex. 2008) (parties agreed to depose 18 opt-in plaintiffs out of 355); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 569-70 (E.D. La. 2008) (court limited depositions to 40 of the 963 opt-in plaintiffs); *Brasfield*, 255 F.R.D. 447, 450 (imposing strict limitations on the travel requirements of opt-in deponents); *Geer*, 2007 WL 821950 at *4-5 (granting protective order against the noticed depositions of 272

plaintiffs in a collective FLSA action); *Fiore v. Goodyear Tire & Rubber Co.*, 2010 WL 4537750, *1 (M.D. Fla. 2010) (affirming decision of Magistrate Judge that forcing an out of state opt-in Plaintiff to travel hundreds of miles to take a deposition would undermine the purpose of a collective action, and effectively destroy any benefits gained by proceeding as a class under the FLSA).

The burden that Plaintiffs, and their counsel, would suffer by the approval of limitless depositions is very apparent.  The judicially recognized burden associated with the time and expense of traveling nationwide for repetitious examinations has been experienced by class members and counsel.  Moreover, many opt-in plaintiffs – approximately 16 – have been forced into voluntary dismissal from the class due to Advantage's oppressive demands.  Advantage's perceived practice of creating onerous deposition schedules, and then seeking the dismissal of non-compliant class members is simply burdensome, harassing and oppressive.

The Plaintiffs have repeatedly stressed to Advantage their concern with the burdensome nature of its deposition philosophy and practices.  Nonetheless, in a clear disregard of the intent of a collective action, Advantage ignores these concerns and continues to assert that it is entitled to "robust" discovery which includes a limitless number of depositions.  In fact, in a January 28, 2011 email, counsel for Advantage stated, without citation to any authority, that some courts have required all opt-in plaintiffs to appear for deposition.  (*See* Delk Dec., Ex. 2).  The suggestion that Advantage will seek such burdensome discovery is particularly alarming given that Advantage has already noticed 76 depositions and taken 33.  However, given the nature of a collective action proceeding and the significant number of plaintiffs that have opted into this case, Advantage's practices and legal position are simply unsupported in the law.

To start, this Court is well aware that the Federal Rules of Procedure presumptively limit the number of depositions to ten (10). Fed. R. Civ. P. 30 (a)(2)(A)(i); *Cunningham v. Smithkline Beecham*, 2008 WL 1994865, *1 (N.D. Ind. 2008). To date, Advantage has conducted 33 depositions without formally seeking leave of court. Admittedly, the rules mandate the expansion of the limit upon leave of court if consistent with the principles stated in Rule 26(b)(2). *Id.* Advantage, however, has simply failed to seek the proper leave or articulate the need for "robust" discovery and an endless number of depositions. For this reason alone, the Motion for Protective Order should be granted. Further, the potential for endless nationwide travel and substantial expenditures in a representative action is deeply concerning and Advantage has been unable to identify any benefit of limitless depositions that would outweigh the burden associated therewith. Rather, Advantage simply continues to rely upon its supposed entitlement to "robust" and individualized discovery of the entire collective class.

Advantage's demand for individualized discovery, however, has been routinely rejected across the nation. Specifically, district courts throughout the country have consistently held that representative discovery is appropriate in a collective action – especially in larger classes such as this. *See, e.g., Adkins v. Mid-America Growers, Inc.*, 141 F.R.D. 466 (N.D. Ill. 1992) (holding that individualized discovery would undermine the purpose and utility of collective action); *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354 (S.D. Ohio 2006) (limiting discovery to a statistically significant representative sampling of the more than 1,500 class members to reduce the otherwise extraordinary burden); *Cranney v. Carriage Services, Inc.*, 2008 WL 2457912 (D. Nev. 2008) (limiting all discovery to ten percent of approximately 300 class members); *Gentrup v. Renovo Svcs., LLC*, 2010 WL 6766418, *8 (S.D. Ohio 2010) (limiting discovery to a representative number of a collective class of 115); *Morales v. Farmland Foods, Inc.*, 2010 WL

3447513, * 3 (D. Neb. 2010) (limiting discovery to fifteen percent of the nearly 300 opt-in plaintiffs).

These cases reveal that Advantage's position of entitlement to limitless depositions rooted in its right to individualized discovery is simply flawed. The Plaintiffs have been more than cooperative in scheduling the 33 depositions taken to date. However, that cooperation has not come without its expense. Plaintiffs' counsel and numerous class members have expended significant time and money in catering to Advantage's "robust" discovery demands. The time has come to put an end to Advantage's transparent attempt to unnecessarily increase the costs of this litigation. Simply put, in a class currently consisting of 663 opt-in Plaintiffs, the law demands court intervention and a restriction on Advantage's deposition scheduling tactics. Allowing the limitless noticing of depositions ignores the rules of procedure and flies in the face of the deeply rooted principles of a collective action.

## IV.   PROPOSAL FOR ADDITIONAL CLASS MEMBER DEPOSITIONS

Having established that Advantage's deposition philosophy is unworkable and continued depositions should be reasonably limited in number, the analysis turns to the deposition plan moving forward. The Plaintiffs do not dispute that Advantage is entitled to additional depositions. However, it is the Plaintiffs' position that those depositions be limited to an additional eight (8) opt-in Plaintiffs. Upon completion of those eight (8) depositions, Advantage will have deposed a total of 40 class members, representing over 6 % of the remaining 663 class members. Such a representative sample is more than appropriate given the size of the class. In *Falcon*, the Court limited deposition testimony to 18 of the 355 class members – a 5% representative sample. 580 F. Supp. 2d at 530. Further, in *Johnson,* the Court limited the class member deponents to 40 of the 963 opt-in Plaintiffs – a 4% representative sample. 561 F. Supp.

2d at 569-70.  As such, it is clear that limiting Advantage's deposition requests to 6% of the remaining opt-in class is more than sufficient given the nature of the case, the size of the class and purpose of a representative action.

The remaining issue is the method by which those class members are selected.  As previously noted, the identity of deponents already deposed has been dictated exclusively by Advantage.  However, it is important to a collective action that a representative sampling be chosen.  Courts have adopted two potential methods of establishing representative discovery. *Oropeza v. AppleIllinois, LLC*, 2010 WL 3034247, * 6 (N.D. Ill. 2010).  One method is to design and implement a procedure for selecting deponents based on objective, statistically valid and reliable criteria that would favor neither party.  *Id.*  The other method is to allow the parties each to select a number of deponents.  *Id.*  Either way, Advantage's method of unilaterally selecting deponents without any apparent rhyme or reason is not an accepted method of establishing representative discovery.   Advantage's tactics are further troubling given its unwillingness to engage in a dialogue with Plaintiffs' counsel regarding a deposition plan that is fair and truly captures representative testimony.

Nonetheless, because Advantage has not revealed its selection process, it is difficult to state with certainty that the chosen deponents to this point comprise a representative sample. That being said, it is proposed that the parties arrive at a mutually agreeable plan in selecting the additional eight (8) deponents that has a better chance of arriving at a representative sample of the class.   This proposal is more than reasonable and reflects the Plaintiffs' continued effort to cooperate in the completion of discovery within the bounds of the Rules of Procedure and the purposes of a representative action.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue an order granting their Motion for a Protective Order, limit the number of additional depositions available to Advantage, and for all other just and proper relief.

Respectfully submitted,

DELK McNALLY LLP

/s/ Jason R. Delk
Jason R. Delk
Michael T. McNally
Daniel J. Gibson
DELK McNALLY LLP
421 S. Walnut
Suite 200
Muncie, IN 47305
(765) 896-9495
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the above and foregoing has been served via the Court's electronic case filing system this 13th day of July, 2011, to the following:

Thomas P. Gies
tgies@crowell.com

Debra H. Miller
miller@millerfisher.com

Jane R. Foster
jfoster@crowell.com

/s/ Jason R. Delk
Jason R. Delk

DELK McNALLY LLP
421 S. Walnut Street
Suite 200
Muncie, IN 47305
Telephone: 765/896-9495
Facsimile: 888/453-0545

10